**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SANDRA ROUSER,
also known as
SANDRA ROUSER WILLIAMS,

Plaintiff,

vs.

NATIONAL CREDIT SYSTEMS, INC.,
and THE MICHAELS ORGANIZATION, LLC,
doing business as THE VILLAGE OF
WESTHAVEN APARTMENTS,

Defendants.

## **COMPLAINT**

1. Plaintiff Sandra Rouser, also known as Sandra Rouser Williams ("Ms. Rouser") brings this action against National Credit Systems, Inc. ("NCS") and The Michaels Organization, LLC ("TMO"), to secure redress from the actions of TMO in creating a fictitious debt, placing it for collection with NCS, which dunned Ms. Rouser and reported the fictitious debt to credit bureaus.

2. Ms. Rouser alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), and the Chicago Residential Landlord Tenant Ordinance, Municipal Code §5-12-010 et seq. ("CRLTO").

## **VENUE AND JURISDICTION**

3. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 15 U.S.C. §1681p (FCRA), 28 U.S.C. §1331 (general federal question), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

4. Venue and personal jurisdiction in this District are proper because Plaintiff resides in this District and all of the events in question occurred in this District.

## PARTIES

5. Plaintiff Sandra Rouser, also known as Sandra Rouser Williams, is a senior citizen and a resident of Chicago, Illinois.

6. Defendant NCS is a Georgia corporation with its principal place of business at 1775 the Exchange St., Suite 300, Atlanta, GA 30339. It does business in Illinois. Its registered agent and office is C T Corporation System, 208 S. La Salle St., Suite 814, Chicago, IL 60604-1101.

7. NCS is a collection agency. It uses the mails, telephone system and Internet to collect consumer debts allegedly owed to third parties.

8. NCS is a debt collector as defined in the FDCPA, 15 U.S.C. §1692a(6).

9. NCS specializes in collecting residential lease debts allegedly owed to landlords.

10. NCS' website states on its first page (https://www.nationalcreditsystems.com/):

> Why Resolving Your Lease Debt Is a Smart Move
>
> Breaking a lease can happen for many reasons—life changes, financial hardship, or emergencies. While these situations are understandable, unresolved rental debt can follow you for years. Taking steps now to settle your past-due balance helps protect your financial future and demonstrates responsibility to future landlords, employers, and credit agencies.

11. Defendant TMO is a limited liability company organized under New Jersey law with a principal address of 2 Cooper St., Box 90708, Camden, NJ 08101. It does business in Illinois. Its registered agent and office is C T Corporation System, 208 S. La Salle St., Suite 814, Chicago, IL 60604-1101.

12. TMO states that it "has worked to design, build and manage rental communities that make it possible for our residents to live more prosperous lives." (https://tmo.com/)

13. TMO manages a number of rental communities in the City of Chicago, including The Villages of Westhaven on the West Side. This includes more than 100 units, of which some but not all are rent subsidized units.

## FACTS

14. Ms. Rouser was the tenant in an apartment at The Villages of Westhaven, with the address 2121 B West Maypole, Chicago, Illinois, beginning in April 2019. Exhibit A is a copy of the most recent lease document as provided by Defendants. As set forth below, the document does not contain the essential requirements of a lease. The document was signed January 9, 2023, and does not contain any other date for the commencement of the lease term. The document states that the lease would exist through March 31, 2024. However, as set forth below, there were disputes between TMO and Ms. Rouser as to what the terms were supposed to be, and the parties agreed to terminate the lease prior to that date.

15. Ms. Rouser was entitled to a rental subsidy and believed that she had rented her unit on that basis.

16. During 2023, Ms. Rouser was informed by TMO that they had placed her in one of the units not intended for subsidized tenants.

17. TMO notified Ms. Rouser that they would have to renew her lease at the market rate.

18. Ms. Rouser informed TMO that she could not afford to rent without the subsidy.

19. In order to allow Ms. Rouser to find alternate, subsidized housing, TMO told Ms. Rouser that she could terminate the lease and move out on 30 days notice.

20. Ms. Rouser gave 30 days notice and vacated the apartment on or about November 30, 2023.

21. Ms. Rouser turned in her keys and left her apartment in good condition.

22. TMO cooperated in transferring her subsidy to another, subsidized apartment from another landlord, thereby agreeing to the early termination of her lease.

23. Ms. Rouser left her forwarding address with TMO.

24. Ms. Rouser provided forwarding information to the Postal Service.

25. Ms. Rouser heard nothing about any amount allegedly owed on account of her lease

until April 2026.

26. In April 2026, Ms. Rouser received a letter dated March 31, 2026, which NCS sent on behalf of TMO (Exhibit B). The letter claimed $6,954 was due.

27. Exhibit B was the first letter Ms. Rouser received from NCS.

28. All acts of NCS complained of herein were taken as agent of TMO, and within the scope of its authority.

29. On April 9, 2026, Ms. Rouser, by counsel, disputed the alleged debt. (Exhibit C)

30. Ms. Rouser paid counsel for the purpose of dealing with the claim against her.

31. On April 23, 2026, NCS sent Ms. Rouser's counsel the letter in Exhibit D, claiming that Ms. Rouser abandoned the apartment and owed rent for the balance of the lease term.

32. Ms. Rouser disputed the debt with NCS (Exhibit E), the Consumer Financial Protection Bureau (Exhibit F), and the Attorney General of Illinois (Exhibits G-H)

33. At some point, no later than April 22, 2026, NCS, on behalf of TMO, reported the purported debt to all three major credit bureaus (consumer reporting agencies), TransUnion, Equifax and Experian.

34. Ms. Rouser disputed the debt with TransUnion (Exhibit I), Equifax (Exhibits J-K), and Experian (Exhibits L-N)

35. The credit bureaus, in the course of investigating Ms. Rouser's dispute, contacted NCS.

36. NCS responded that the debt was valid.

37. NCS provided Plaintiff with the copy of the lease in Exhibit A.

38. As a result, the debt continues to be listed on Ms. Rouser's credit reports with Trans Union (Exhibits O-P), Equifax (Exhibit Q), and Experian (Exhibits R-S).

39. The claim is inherently suspicious to anyone familiar with residential lease debts because it was not asserted for more than two years after Ms. Rouser moved out. Most landlords act to collect rent they are allegedly owed promptly.

40. In addition, the claim is legally invalid because the document in Exhibit A:

a. Is for a period of more than one year, but fails to identify the lessor, state the starting date of the tenancy, or adequately identify the leased unit, as required under 740 ILCS 80/2;

b. Fails to comply with the CRLTO §5-12-090 and is subject to cancellation upon notice.

41. CRLTO §5-12-090, "Identification of owner and agents," provides:

A landlord or any person authorized to enter into an oral or written rental agreement on the landlord's behalf shall disclose to the tenant in writing at or before the commencement of the tenancy the name, address, and telephone number of:

(a) The owner or person authorized to manage the premises; and

(b) A person authorized to act for and on behalf of the owner for the purpose of service of process and for the purpose of receiving and receipting for notices and demands.

A person who enters into a rental agreement and fails to comply with the requirements of this section becomes an agent of the landlord for the purpose of (i) service of process and receiving and receipting for notices and demands and (ii) performing the obligations of the landlord under this chapter and under the rental agreement.

The information required to be furnished by this section shall be kept current and this section extends to and is enforceable against any successor landlord, owner, or manager.

If the landlord fails to comply with this section, the tenant may terminate the rental agreement pursuant to the notice provisions of Section 5-12-110(a). If the landlord fails to comply with the requirements of this section after receipt of written notice pursuant to Section 5-12-110(a), the tenant shall recover one month's rent or actual damages, whichever is greater.

42. Section 5-12-110(a) provides:

(a) Noncompliance by Landlord. If there is material noncompliance by the landlord with a rental agreement or with Section 5-12-070 either of which renders the premises not reasonably fit and habitable, the tenant under the rental agreement may deliver a written notice to the landlord specifying the acts and/or omissions constituting the material noncompliance and specifying that the rental agreement will terminate on a date not less than 14 days after receipt of the notice by the landlord, unless the material noncompliance is remedied by the landlord within the time period specified in the notice. If the material noncompliance is not remedied within the time period so specified in the notice, the rental agreement shall terminate, and the tenant shall deliver possession of the dwelling unit to the landlord within 30 days after the expiration of the time period specified in the notice. If possession shall not be so delivered, then the tenant's notice shall be deemed withdrawn and

> the lease shall remain in full force and effect. If the rental agreement is terminated, the landlord shall return all prepaid rent, security and interest recoverable by the tenant under Section 5-12-080.

43. Because the document in Exhibit A fails to contain essential information, fails to comply with CRLTO §5-12-090 and was subject to termination upon notice, the claimed debt is unenforceable against Ms. Rouser.

44. It should have been obvious to NCS, as a claimed specialist in residential lease debts, that there was a problem with Exhibit A.

45. Ms. Rouser suffered actual damages from the conduct of Defendants, in that:

a. Her credit was damaged;

b. She spent money and time in attempting to clear her credit;

c. An invalid debt has been created against her;

d. She suffered distress and anguish.

**<u>COUNT I – FCRA</u>**

46. Plaintiff incorporates paragraphs 1-45.

47. This claim is against NCS and TMO.

48. NCS and TMO violated the FCRA, 15 U.S.C. §1681s-2(b), by:

a. Failing to reasonably investigate Plaintiff's dispute;

b. Falsely reporting to the credit bureaus, when they contacted NCS in response to Plaintiff's dispute, that the debt was valid.

49. Section 1681s-2(b) provides:

> (b) Duties of furnishers of information upon notice of dispute.
>
> (1) In general. After receiving notice pursuant to section 611(a)(2) [15 USC §1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer

reporting agency pursuant to section 611(a)(2) [15 USC §1681i(a)(2)];

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 USC §1681i(a)(1)] within which the consumer reporting agency is required to complete actions required by that section regarding that information.

50. NCS and TMO committed such violations willfully or negligently, thereby violating 15 U.S.C. §1681n and/or §1681o.

51. Section 1681n provides:

§1681n. Civil liability for willful noncompliance

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of–

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

52. Section 1681o provides:

§1681o. Civil liability for negligent noncompliance

(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of--

(1) any actual damages sustained by the consumer as a result of the failure;

> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against NCS and TMO for:

i. Actual damages;

ii. Punitive damages;

iii. Statutory damages;

iv. Attorney's fees, litigation expenses and costs of suit;

v. Such other or further relief as the Court deems proper.

**<u>COUNT II – FDCPA</u>**

53. Plaintiff incorporates paragraphs 1-45.

54. This claim is against NCS.

55. NCS violated 15 U.S.C. §§1692e, 1692e(8), 1692e(10), 1692f and 1692f(1) by reporting the purported debt to credit bureaus, when it knew or should have known that the debt was not valid.

56. Section 1692e provides:

> False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt; . . .
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

57. Section 1692f provides:

> Unfair practices
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against NCS for:

i. Statutory damages;

ii. Actual damages;

iii. Attorney's fees, litigation expenses and costs of suit;

iv. Such other or further relief as the Court deems proper.

**<u>COUNT III – DECLARATION THAT NO ENFORCEABLE DEBT EXISTS</u>**

58. Plaintiff incorporates paragraphs 1-45.

59. This claim is against both NCS and TMO.

60. The purported debt never existed, as Plaintiff and TMO agreed to the early termination of Plaintiff's tenancy.

61. The purported debt is legally invalid because of the defects in Exhibit A.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants for:

i. A declaration that Plaintiff has no legal obligation to TMO;

ii. Attorney's fees, litigation expenses and costs of suit under CRLTO 5-12-180.

iii. Such other or further relief as the Court deems proper.

*<u>/s/ Daniel A. Edelman</u>*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Caileen M. Crecco (ARDC 6343265)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
tgoodwin@edcombs.com
ccrecco@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman